IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EMMA JEAN RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-233-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Emma Jean Richardson ("Plaintiff" or "Richardson") applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3), on July 7, 2010. *See* Doc. 12 at 1. After being denied supplemental security income, Richardson timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on December 19, 2011. *See* Doc. 12 at 1-2. Richardson subsequently petitioned for review to the Appeals Council, which denied review of Richardson's case on March 20, 2013. *See* Doc. 12 at 2. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See* Doc. 12 at 2. Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court REVERSES the Commissioner's decision and REMANDS the matter with instructions to the ALJ for an evaluation of Plaintiff's mental impairments that complies with applicable regulations.

## I. NATURE OF THE CASE

Richardson seeks judicial review of the Commissioner's decision denying her application for supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court

will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and

distinct program.  SSI is a general public assistance measure providing an additional resource

to the aged, blind, and disabled to assure that their income does not fall below the poverty

line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§

1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law

and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims

for DIB and SSI are treated identically for the purpose of determining whether a claimant is

disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under

DIB and SSI must provide "disability" within the meaning of the Social Security Act which

defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d),

1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to

disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax
revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520,

416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set

forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question,
or, on steps three and five, to a finding of disability.  A negative answer to any
question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357

F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying

disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the

burden shifts to the Commissioner, who must then show there are a significant number of

jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Richardson, age 49 at the time of the hearing, has a bachelor's degree in Human Services, an associate's degree in Child Development, and a minor in Psychology. Tr. 33-34. Richardson has worked as a supervisor in residential homes, an apartment manager, a private duty nurse, and a caregiver in an assisted living facility. (R. 34).

Richardson received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners. Brad P. Katz, M.D. ("Dr. Katz") noted that an MRI "shows facet hypertrophy at L4-5 and L5-S1 causing borderline spinal

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

stenosis, particularly at the L4-5 level" on January 24, 2008.  Tr. 222.  Dr. Katz also noted that her past medical history was significant for hypertension, depression, sleep disturbance, hypothyroidism, and glaucoma.  *Id.*  Richardson had a lumbar epidural at L4-5 on January 24, 2008 to treat her lumbar spinal stenosis.  Tr. 220.  On February 7, 2008, Richardson received a cervical epidural steroid injection at C6-7.  Tr. 219.  An eye exam revealed that Richardson's visual acuity with best correction for distance is 20/60-1 in the right eye and 20/40+ in the left.  Tr. 228.  Her visual acuity with best correction for reading or close work is 20/40.  *Id.*  Richardson had a cataract removed in 2010.  Tr. 327.  After it was removed, she reported that she could see "so much better."  Tr. 368.  Richardson told the doctor that her vision is still not "real clear [in her right eye] but definitely better than before."  *Id.*

On October 6, 2008, Richardson sought treatment at Medical Center Enterprise for numbness and tingling in her hands and feet.  Tr. 243-44.  Richardson rated her neck pain at 8/10.  Tr. 224.  Richardson's diagnosis was peripheral neuropathy.  Tr. 248.  Hassan Kesserwani, M.D. ("Dr. Kesserwani") treated her on October 23, 2008 for right C5 radiculopathy, right carpal tunnel, and lumbar radiculopathy.  Tr. 254.  On December 10, 2008, Dr. Kesserwani diagnosed right carpal tunnel syndrome and diminished right plantar sensory of the right leg after nerve conduction studies.  Tr. 252.  Dr. Kesserwani prescribed a wrist splint.  *Id.*

Ben A. Smith, D.O. ("Dr. Smith") treated Richardson for feelings of weakness, polyarticular joint pain, hypothyroidism, hyperglycemia, tinea, imbricate, anxiety, insomnia, spontaneous ecchymosis, prurirtus, skin lesion, and hyperhidrosis.  Tr. 257-88.

Suhail Shafi, M.D. ("Dr. Shafi") evaluated Richardson on November 2, 2010.  He

noted a medical history of hyperthyroidism, osteoarthritis, muscle spasms in her neck, carpal tunnel, hypertension, high cholesterol, diabetes, sleep apnea, glaucoma, swelling in Richardson's hands and feet, acid reflux, anxiety, depression, and insomnia. Tr. 339. Review of symptoms revealed elevated cholesterol, acid reflux, pain, nervousness, depression, and insomnia. Tr. 340. On exam, Dr. Shafi noted, "Gait & Station Abnormal, Digits & Nails Abnormal, Inspection/Palpations/Motion Stability/Strength (specify joint) Abnormal." Tr. 341. Dr. Shafi explained Richardson's gait was "slightly labored" and her ability to "flex her lower back is slightly impaired." Richardson had tenderness on deep palpation of her shoulders bilaterally. Tr. 342. A neurological exam revealed that Richardson's muscle strength was diminished to 3/5 in her upper extremities and 4/5 in her lower extremities. *Id.* Sensation on her right side was also diminished at 3/5. Tr. 342. Dr. Shafi found Richardson to "have relatively well preserved ability to stand up and walk around, in spite of the findings and deficits listed above." *Id.*

On November 30, 2010, Fernelle L. Warren, Ph.D. ("Dr. Warren"), a clinical psychologist, performed a psychological evaluation and noted that Richardson's "attention was mildly impaired for conversational purposes." Tr. 345. An examination revealed that Richardson was "unable to perform reverse serial of 7's." *Id.* "With regard to immediate memory, she was unable to recall three objections (i.e., dog, house, and rope) after a five minute delay with interference." *Id.* Dr. Warren opined that "the insight into her acknowledging her problems and accepting responsibility for her actions is considered poor." *Id.* "Judgment with regard to social functioning and family relationships was considered poor." *Id.* Dr. Warren diagnosed Richardson with "Major Depressive Disorder, Recurrent,

Moderate." *Id.* Dr. Warren noted that her prognosis was poor. Tr. 346. Dr. Warren stated that she "appeared to be motivated and fully cooperative with the examiner." *Id.* Based on the examination as well as the records provided by DDS for review, Dr. Warren opined that Richardson's ability to "function independently is at times mildly to moderately impaired," and "understand instructions, to relate to others, to respond appropriately to work pressure in a work setting, co-workers and supervision is mildly to moderately impaired." *Id.*

On December 10, 2010, Steven D. Dobbs, Ph.D. ("Dr. Dobbs"), a non-examining reviewing physician, opined that Richardson's mental impairments are severe. Tr. 347. Dr. Dobbs opined that Richardson has mild limitations in "restriction of activities of daily living," and "difficulties in maintaining social functioning." Tr. 357. Dr. Dobbs also opined that she has moderate "difficulties in maintaining concentration, persistence, or pace." *Id.* Dr. Dobb's further opined that Richardson is moderately limited in her ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule," "maintain regular attendance," "be punctual with customary tolerances," "complete a normal work-day and workweek without interruptions from psychologically based-symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 361-62.

On December 27, 2010, Carol R. Porch, M.D. ("Dr. Porch"), another non-examining reviewing physician, opined that Richardson could occasionally lift twenty pounds and frequently lift ten pounds. Tr. 379. Dr. Porch opined that Richardson could stand and/or walk about six hours in an eight-hour day, could frequently push and pull with her right upper extremity, could never climb ladders/ropes or scaffolds, and is limited in her ability

to reach in all directions, handle, and finger. Tr. 379-81.   Dr. Porch opined she needed to avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and avoid all exposure to hazards such as machinery or heights.  Tr. 382.  Dr. Porch opined that Richardson's hypertension, sleep apnea, thyroid disease, diabetes, and high cholesterol should not be found severe.  Tr. 383.

On May 5, 2011, Richardson returned to Dr. Smith with complaints of "a lot of anxiety with people and crowds, limited lifting with lbp."  Tr. 389.  Dr. Smith noted that Richardson's "[l]umbar/lumbosacral spine exhibited abnormalities tender lower lumbar area L4-S1 with psis tenderness."  Tr. 390.  While Dr. Smith did not assess Richardson with anxiety or depression, Dr. Smith noted that Richardson was taking Celexa, a depression medication.  *Id.*

On August 16, 2011, Dr. Smith wrote a letter "requesting that [Richardson] be considered for full disability due to her medical conditions" consisting of hypertension, diabetes, anxiety, arthralgia, hypothyroidism, chronic headaches, chronic fatigue, and insomnia.  Tr. 65.  Dr. Smith further stated that he fells that Richardson "will not likely be able to obtain gainful employment." *Id.*

The hearing before the ALJ was held on November 8, 2011.  Tr. 33.  Richardson testified that she became unable to work on January 15, 2009 after having "anxiety attacks on the job . . . as well as the pain and everything that [she] was having." Tr. 35.  Richardson told the ALJ, "Mainly, it was the anxiety, because of the working conditions." *Id.*  When the ALJ asked "What keeps you from being able to work?", Richardson replied "The pains, the lack of sleep, the depression. Just all of the above, mainly the lack of sleep, the pains and the

depression." *Id.* Richardson also testified that her carpal tunnel syndrome, her back pain, and swelling in her legs and feet make it difficult to work. Tr. 36. Richardson testified that she was scheduled for carpal tunnel surgery, but was unable undergo the surgery due to lack of insurance. *Id.* Richardson also testified that she has had "a corneal transplant in both eyes, as well as a cataract removed from both eyes and glaucoma in both eyes." *Id.*

After Richardson testified, the ALJ heard testimony from a vocational expert. Tr. 30-31. The ALJ asked the vocational expert whether a hypothetical person with the restrictions given by both of the non-examining sources, Dr. Dobbs and Dr. Porch, would be able to perform Richardson's past work. Tr. 46-47. The expert indicated that such an individual could perform Richardson's past work as a "Teacher's Aide." Tr. 47. The ALJ then asked whether there were any other jobs in the national economy that such an individual could perform. Tr. 47-48. The vocational expert indicated that such a person could work as a garment sorter, inserter, or cafeteria attendant. *Id.* The vocational expert also provided job incidence figures for each position. *Id.*

The ALJ applied the five-step sequential evaluation process as provided in agency regulations. 20 C.F.R. § 4040.1520. In relevant part, the ALJ adopted the reports of Dr. Porch and Dr. Dobbs when determining that Richardson has the residual functional capacity to perform work. Tr. 19, 22, 46-47. Specifically, the ALJ found Richardson is capable of a range of light work with the following limitations:

> [S]he would be limited in using her right upper extremity to frequent pushing and pulling. She could never climb ladders, ropes or scaffolds. She could frequently use her right hand for handling (gross manipulation), and fingering. She should avoid concentrated exposure to extreme cold, wetness, and humidity, and vibration. She should avoid all exposure to hazardous

machinery and unprotected heights.  With regard to her mental residual functioning capacity, she is able to understand and remember simply and detailed but not complex instructions.  She is able to sustain attention and concentration for two hours periods to complete simple and detailed tasks in a regular workday at an acceptable pace and attendance schedule.

Tr. 16.  The ALJ then found Richardson is not disabled.  Tr. 23.

## V.  ISSUES

Richardson raises the following issues for judicial review:

(1) Whether the ALJ erred in finding that Richardson can return to past relevant work;

(2) Whether the ALJ failed to use the required psychiatric review technique form, or its mode of analysis, when evaluating Richardson's mental impairments, and whether such failure constitutes error; and

(3) Whether the ALJ erred in failing to explain the weight he gave to the various physicians.

*See* Doc. 12 at 1.

## VI.  DISCUSSION

Richardson raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of several of the plaintiff's specific arguments because the court concludes that the Commissioner erred as a matter of law on Richardson's second issue raised, and thus, this case is due to be remanded for further proceedings.

Richardson argues that the "ALJ failed to use the required Psychiatric Review Technique Form (or its mode of analysis) when evaluating Ms. Richardson's mental

impairments. *See* Doc. 12 at 8. In *Moore v. Barnhart*, the Eleventh Circuit noted that agency

regulations provide a "mode of analysis" for considering mental impairments which

> require the ALJ to use the 'special technique' dictated by the PRTF
> ["Psychiatric Review Technique Form"] for evaluating mental impairments.
> 20 C.F.R. § 404.1520a-(a). This technique requires separate evaluations on a
> four-point scale of how the claimant's mental impairment impacts four
> functional areas: 'activities of daily living; social functioning; concentration,
> persistence, or pace; and episodes of decompensation. 20 C.F.R. §
> 404.1520(a)-(c)(3-4). The ALJ is required to incorporate the results of this
> technique into the findings and conclusions. 20 C.F.R. § 4040.1520(a)-(e)(2).

405 F.3d 1208, 1213-14 (11th Cir. 2005). Additionally,

> [f]or the first three functional areas, an impairment may be rated as: none,
> mild, moderate, marked, and extreme. For the fourth functional area, episodes
> of decompensation, a four point scale is utilized: none, one or two, three, four
> or more. 20 C.F.R. § 404.1520(c)(4). Impairments rated as none or mild in the
> first three categories and "none" in the four category are generally considered
> not to be severe. 20 C.F.R. § 404.1520a (d)(1).

*Volley v. Astrue*, 2008 WL 822192, *18 (N.D. Ga. Mar. 24, 2008) (citing *Moore*, 405 F.3d

at 1213-14). After noting that agency regulations provide for this "mode of analysis"

involving a PRTF, the Eleventh Circuit then held that

> where a claimant has presented a colorable claim of mental impairment, the
> social security regulations require the ALJ to complete a PRTF and append it
> to the decision, or incorporate its mode of analysis into his findings and
> conclusions. Failure to do so requires remand.

*Id.* at 1214.

     1.    *Colorable Claim of Mental Impairment.*

     Here, the ALJ did not complete a PRTF as contemplated by 20 C.F.R. § 4040.1520a-

(a). *See Moore*, 405 F.3d at 1214. However, as a threshold matter, whether this failure to

complete a PRTF warrants remand with instructions depends on whether Richardson has

presented a "colorable claim of mental impairment." *See id.* Although the Eleventh Circuit Court of Appeals has not yet defined what constitutes a "colorable claim of mental impairment," courts within the circuit have addressed whether varying circumstances and facts establish a colorable claim of mental impairment. *See, e.g., Sesberry v. Astrue*, No. 3:08-cv-989-J-TEM, 2010 WL 653890, at *3–5 (M.D. Fla. Feb. 18, 2010) (claimant's medical record included two notations of depression from one of the claimant's treating physicians, who also referred claimant to a psychiatrist for an evaluation and prescribed an antidepressant, but the court concluded that "this evidence, without more, does not establish a colorable claim of mental impairment."); *Beattie v. Astrue*, No. 5:09-cv-5-Oc-GRJ, 2009 WL 4510117 (M.D. Fla. Dec. 1, 2009) (plaintiff's evidence of isolated hospitalization for attempted suicide and testimony of depression was insufficient to establish a colorable claim of mental impairment); *Kellerman v. Astrue*, No. 5:08-cv-373-Oc-GRJ, 2009 WL 3586554 (M.D. Fla. Oct. 28, 2009) (plaintiff failed to establish colorable claim of mental impairment when only a single medical record related to the asserted depression and an anti-depressant was listed as a current medication); *but see Driver v. Astrue*, No. 1:07-cv-3014-AJB, 2009 WL 631221, at *24–25 (N.D. Ga. 2009) (colorable claim of mental impairment presented where claimant offered depression at her hearing as a basis for disability and specifically testified before the ALJ about her depression and limitations caused by it, and which limitations might interfere with her ability to work); *Grant v. Astrue*, No. 3:07-cv-572-J-TEM, 2008 WL 4360985 (M.D. Fla Sept. 24, 2008) (finding that the plaintiff had a long history of depression and treatment for such depression which resulted in limitations in the plaintiff's ability to work).

Although many courts within this Circuit have generally found that depression, in and of itself, is insufficient as a matter of law to constitute a colorable mental impairment, this Court is inclined to find that Richardson has stated a colorable mental impairment as a result of the medical opinions offered by Richardson regarding the extent of her depression, coupled with the other symptoms that Richardson's testimony and evidence supports, e.g., anxiety. *See Driver v. Astrue*, No. 1:07-cv-3014-AJB, 2009 WL 631221, at *24–25 (N.D. Ga. March 9, 2009). As the ALJ noted in his decision, Dr. Smith treated Richardson for anxiety and depression; Dr. Warren performed a psychological exam and diagnosed Richardson with major depressive disorder, recurrent, moderate; Dr. Dobbs completed a PRTF and Mental Residual Functional Capacity which placed mental limitations on Richardson; and Richardson testified to anxiety and depression. Tr. 18-19. All of this information forms a reasonable basis for a colorable claim of mental impairment which triggers the ALJ's duty to complete a PRTF and append it to his decision, which the ALJ failed to do. *See Curry v. Astrue*, 2008 WL 161925 (S.D. Ala. Jan. 10, 2008) (holding that there "can be no doubt that plaintiff has a colorable claim of mental impairment" as the ALJ had implicitly determined that one of the claimant's severe impairments was borderline intellectual functioning). For these reasons, this Court finds that Plaintiff has presented a colorable claim of mental impairment. *See Moore*, 405 F.3d at 1213-14.

    2.    *Incorporation of Mode of Analysis by Reference.*

The Government argues that although the ALJ did not complete a PRTF as required by 20 C.F.R. § 4040.1520a-(a), the ALJ nonetheless incorporated its mode of analysis into his findings and conclusions by adopting Dr. Dobbs' opinion, and thus, the PRTF completed

by Dr. Dobbs. *See* Doc. 14 at 7-8; *Moore*, 405 F.3d at 1214. The Government asserts that it was harmless for the ALJ to omit the explicit discussion of the agency's "special technique" for evaluating mental impairments in the ALJ's decision because Dr. Dobbs' report, which the Government asserts the ALJ adopted and relied upon in his decision, addressed the special technique categories and supported the ALJ's ultimate finding of non-disability at step five of the sequential evaluation process. *See* Doc 14 at 7-8.

In *Volley v. Astrue*, the Government argued, as they do here, that the ALJ satisfied *Moore's* requirements by incorporating the State agency psychologist's evaluation of the four factors into his decision. *Volley v. Astrue*, 2008 WL 822192, *18 (N.D. Ga. Mar. 24, 2008). The court rejected the Government's argument and found that discussion in the ALJ's decision regarding incorporation of the State agency psychologist's evaluation of the four factors in his own decision did not satisfy the requirements of 20 C.F.R. § 404.1520a. *Id.* at *18-19. The court explained that

> under both the plain language of the regulation and Moore, the ALJ *must* either *complete* the PRTF or *explicitly analyze* the four factors within the decision. In this case, the ALJ's obscure reference to PRTFs completed earlier in the administrative proceedings is plainly insufficient.

*Id.* (emphasis added). The court further noted that since the two State agency psychologists had different conclusions regarding the claimant's limitations in maintaining concentration, persistence or pace, the court was unable to determine whether the ALJ's failure to apply the statute's special technique categories to the assessment of the plaintiff's mental impairments was harmless error. *Id.* at *19 (citing 20 C.F.R. § 404.1520a).

This Court is inclined to agree that an ALJ's decision to forego the "technicality" of

completing a PRTF, even when such completion upon remand would simply be rote or mechanical completion, constitutes reversible error and is not harmless.  The plain language of 20 C.F.R. § 404.1520a calls for either actual completion of the PRTF or explicit analysis in the ALJ's facts and conclusions of his decision.  The ALJ did not complete the PRTF, nor did he explicitly analyze the four factors in his opinion.  Additionally, regarding this strict requirement of actual completion or explicit analysis, one of the stated purposes for the "special technique" is to help the Social Security Administration "organize and present [its] findings in a clear, concise, and consistent manner." *Grant v. Astrue*, No. 3:07–cv–572–J–TEM, 2008 WL 4360985, *7 (M.D. Fla. Sept. 24, 2008) (citing 20 C.F.R. § 404.1520a(3)). The specific documentation requirements "are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements." *Id.* (citing *Selassie v. Barnhart*, 203 Fed. Appx. 174, 176 (9th Cir. 2006)).

Applying this rule, this Court finds that the ALJ did not complete a PRTF and append it to his decision, nor did he incorporate the mode of analysis of the PRTF and explicitly analyze the four factors presented in 20 C.F.R. § 4040.1520a-(a).  For these reasons, the ALJ's failures constitute reversible error.   *Moore*, 405 F.3d at 1213-14.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is not supported by substantial evidence or a proper application of the law.  Accordingly, this case will be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion.  A

separate order will be entered.

Plaintiff is cautioned, however, that this Memorandum Opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act.  *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

DONE this 13th day of May 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE